Idonia M. BROWN *v.* Jerry J. FORD and Alvin FORD, Jr., Doing Business as LAKESHORE MOTOR COMPANY

83-96                                         658 S.W.2d 355

Supreme Court of Arkansas
Opinion delivered September 26, 1983
[Rehearing denied October 31, 1983.]

*Legal Services of Arkansas,* by: *Gilbert L. Glover* and *Mary W. Cochran,* for appellant.

*James W. Haddock,* for appellees.

RICHARD B. ADKISSON, Chief Justice. This appeal arises from a deficiency judgment rendered against appellant, Idonia Brown, on an installment sale contract representing the deferred purchase price of an automobile sold by appellee, Lakeshore Motor Company, hereinafter Lakeshore.

The points upon which Appellant Brown relies for reversal are that the trial court erred: (1) in ruling that Lakeshore disposed of the collateral in a commercially reasonable manner; (2) in finding the notice of private sale was sufficient; (3) in granting the full amount requested for

repair and maintenance expense; and (4) in failing to award appellant damages on her counterclaim under Ark. Stat. Ann. § 85-9-507 (1) (Supp. 1983). On appeal we affirm.

On July 21, 1978, Brown bought a 1978 Ford Pinto automobile from Lakeshore. Brown executed an installment sale contract for the unpaid purchase price. Subsequently, Lakeshore assigned the contract to Ford Motor Credit Company, hereinafter Ford Credit. On July 2, 1980, Ford Credit repossessed the automobile after Brown failed to make the required payments. Brown received notice from Ford Credit on July 2, 1980, that the car was on Lakeshore's lot, that it would be sold at private sale anytime after ten days from the date of notice, and that Brown would be liable for any deficiency arising from the resale of the car. On September 2, 1980, Lakeshore repurchased the contract from Ford Credit for the amount due thereon, pursuant to the repurchase agreement.

When repossessed, the car had extensive physical damage to the grill, roof, hood, and doors. On repurchase, Lakeshore exhibited the car on its used car lot and tried to sell the car both at wholesale and retail in its damaged condition. After no bids were obtained, Lakeshore began necessary repairs in order to market the car. The car was eventually resold on October 31, 1981, approximately 16 months after the repossession.

Brown first argues that Lakeshore failed to sell the collateral within a commercially reasonable time. In determining the commercial reasonableness of a sale we must consider the reasonableness of method, time, place, and terms. Ark. Stat. Ann. § 85-9-504 (3) (Supp. 1983). The uncontroverted testimony was that upon repurchase the appellee immediately began trying to sell the automobile to wholesalers and individual purchasers. After being unable to interest a buyer, the appellee began repairs on the car. Apparently, Lakeshore did everything it could do to sell the vehicle as quickly as possible. Brown offered no proof as to what other steps Lakeshore could have taken to sell the car. Therefore, we must affirm the trial court in its finding that

the 16 month delay in reselling the car was commercially reasonble.

Brown next argues that the notice given by Ford Credit was insufficient for a sale held by Lakeshore 16 months later. We do not agree. The secured party has only a duty to give reasonable notice of the time after which any private sale will be made. A second notice is not required even though a significant period of time passes before resale. See Ark. Stat. Ann. § 85-9-504 (3) (Supp. 1983).

Brown also argues the notice was misleading in that it stated Lakeshore was to sell the car, but the car could be redeemed prior to sale from Ford Credit Company. We find no merit to this argument. Ford Credit was an assignee of the contract and was a secured party along with Lakeshore. Brown admits to receiving notice from Ford Credit. The fact that Brown went by and discussed with the dealer the possibility of getting the car back proves that the notice was sufficient to prevent her from being misled. This further shows that the notice was given in time to allow the appellant to exercise her right of redemption.

The third argument asserted by Brown is that the trial court erred in awarding the full amount of repair and maintenance expense. Ark. Stat. Ann. § 85-9-504 (1) allows a secured party to recover the cost of repairs "following any commercially reasonable preparation or processing . . . ." Therefore, recovery of any commercially reasonable cost in preparing the vehicle for resale would be allowed under this statute. The testimony given by Lakeshore shows that there was extensive physical damage done to the vehicle. Also, the carpet, tires, belts, and locks had to be replaced along with numerous other repairs and maintenance. These repairs were not started immediately after the repossession but were progressively done in order to make the vehicle marketable. Therefore, we cannot say the trial court committed error in its finding on this issue.

Brown further asserts that the award of $1,098.51 was error because the appellee only proved $1,024.64, a difference of $73.81. Since this issue was not raised in the trial court we

will not consider it for the first time on appeal. *Wilson* v. *Lester Hurst Nursery, Inc.,* 269 Ark. 19, 598 S.W.2d 407 (1980).

In her final argument Brown claims she is entitled to damages under Ark. Stat. Ann. § 85-9-507 (1). This section provides damages for the debtor if he can show that the secured party did not dispose of the collateral in a commercially reasonable manner. See Ark. Stat. Ann. § 85-9-501 *et seq.* Since we have affirmed the trial court's finding that Lakeshore did dispose of the collateral in a commercially reasonable manner, there can be no merit to this argument.

The judgment is affirmed.